UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WARREN L. SIMS,

    Petitioner,

v.                                                                                CASE NO. 6:11-cv-1940-Orl-31GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

**ORDER**

        This case is before the Court on a petition for habeas relief filed pursuant to 28 U.S.C. § 2254 by Petitioner Warren L. Sims ("Petitioner") (Doc. 6, filed December 21, 2011). Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 19). Petitioner filed a reply to the response (Doc. 30).

        Petitioner raises three claims for relief in his petition. Petitioner claims that: (1) a State witness recanted trial testimony that implicated Petitioner in crimes he did not commit; (2) the State committed a *Giglio* violation by knowingly presenting false testimony from the witness who later recanted; and (3) trial counsel was ineffective for failing to adequately cross-examine the witness regarding her plea agreement with the State (Doc. 6 at 4-11). For the reasons set forth below, the petition is denied.

**I.**     **Facts and Procedural History**

        On September 24, 2007, Petitioner was charged by second amended information with burglary of a dwelling with a firearm (count one), possession of a firearm/ammunition by a felon (count two), grand theft of greater than $300.00 but less than $20,000 (count three), and grand theft of statutory

property (count four) (App. A at 55).[1]  After a jury trial on the burglary and grand theft charges, Petitioner was found guilty of counts one, three, and four. *Id.* at 86-88.  The charge of possession of a firearm by a convicted felon was *nol prossed*. *Id.* at 105.  Petitioner was sentenced to life in prison. *Id.* at 108-121.  Petitioner's convictions and sentence were *per curiam* affirmed by the Fifth District Court of Appeal (App. E at 21; *Sims v. State*, 27 So. 3d 43 (Fla. 5th DCA 2010)).

Petitioner filed an amended motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 ("3.850 motion"), raising the same grounds as are raised in the instant petition (App. F at 26).  The trial court denied the motion with a written opinion, and the Fifth District Court of Appeal *per curiam* affirmed (App. G at 33; *Sims v. State*, 75 So. 3d 295 (Fla. 5th DCA 2011)).

## II.  Legal Standards

### A.  *Standard of Review under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits, and deference is warranted.  *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

---

[1] Unless otherwise noted, citations to the record refer to the appendices filed with Respondents response to the petition (Doc. 21).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and

3

convincing evidence." 28 U.S.C. § 2254(e)(1*); see e.g. Miller–El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

### B.   *Standard for Ineffective Assistance of Counsel*

The standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), are applicable to the claims of ineffective assistance of counsel raised in this case.  In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) whether the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009).  Therefore, a habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanz*, 556 U.S. 111, 113 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003))).  Because both parts of the *Strickland* test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.  A court must adhere to a strong presumption that

4

"counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  The petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id*.  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of *Strickland*, Petitioner's burden of demonstrating prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.[2]

**III.    Analysis**

---

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*a.     Claims One and Two*[3]

In Claim One, Petitioner alleges that post-trial, his co-defendant, Dana Johnson ("Johnson"), recanted the trial testimony which had implicated Petitioner of crimes he did not commit (Doc. 6 at 4). Plaintiff alleges that without Johnson's false trial testimony, he would have been acquitted because "no evidence existed that could reasonably establish the elements of armed burglary and the grand theft offense but for Ms. Johnson's false testimony." (App. F at 36).[4] In Claim Two, Petitioner alleges that the state attorney, Elizabeth Purdy ("Purdy"), knowingly presented Johnson's false testimony during his trial, thus committing a *Giglio*[5] violation (Doc. 6 at 6).

In support of his claims, Petitioner attaches a statement from Johnson, notarized on June 16, 2010, in which Johnson attests the following: She "made several untrue and incriminating statements about [Petitioner]" in a taped statement to the police at the time of her arrest; after almost a year in

---

[3] Respondents argue that Claims One and Three have not been properly exhausted because, the only issue Petitioner specifically argued to the state appellate court regarding Claims One and Three was the lower court's failure to hold an evidentiary hearing (Doc. 19 at 5). Petitioner counters that the unpublished Eleventh Circuit decision in *Darity v. Secretary, D.O.C.*, 244 Fed. Appx. 982 (11th Cir. 2007) recognizes that, because Florida Rule of Appellate Procedure § 9.141(b)(2)(C) does not require briefs or oral argument in order to file an appeal, there is no need for a petitioner to specifically raise his constitutional claims in the state appellate brief in order to satisfy the federal exhaustion requirement. Although the underlying state case relied upon in *Darity* is no longer the decisional law of the Fifth District Court of Appeal, at the time Petitioner filed his appeal, he was not obligated to specifically raise and fully address his constitutional issues in his appellate brief. Accordingly, these claims are not procedurally barred and will be addressed on the merits. *See Web v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000) (movant did not waive issue by failing to plead it in initial brief on appeal from summary denial of post-conviction motion), *overruled by Ward v. State*, 19 So. 3d 1960 (Fla. 5th DCA October 2, 2009) (issues not raised in brief from summary denial of Rule 3.850 are abandoned).

[4] Petitioner has provided no supporting argument for the claims in his federal petition. His arguments are therefore, taken from his amended Rule 3.850 motion (App. F).

[5] *Giglio v. United States*, 405 U.S. 150 (1972) (the failure of the prosecution to inform the jury that a witness had been promised leniency in exchange for testimony constituted a violation of due process).

6

county jail, she was offered a five year sentence if she testified truthfully at Petitioner's trial; she intended to testify truthfully at trial in order to "correct" the false information that she had given the police; during a deposition, she attempted to correct the information that she had given to the police by claiming that she never saw Petitioner with stolen merchandise; however, she was advised by Purdy that if she didn't cooperate, she would face life in prison; she told Purdy that she had been upset with Petitioner when she talked to the police because she thought he had told the police about her involvement in the burglary; Purdy told her that if she did not testify to the same information she gave the police in her taped statement, her plea offer would be revoked and she would face life in prison; Purdy played the taped statement Johnson had made to the police and told her where to "embellish"; during trial, she attempted to correct her statements to police but "Purdy stopped me [and] tried to make me go along with the lies when I argued she threatened in open court to take back my [five year] sentence[.]" (Doc. 1-1 at 1-2).

Petitioner raised these claims in his Rule 3.850 motion, and the post-conviction court denied Claim One on the basis that Johnson's testimony was not the only evidence linking Petitioner to the charges. The court concluded that there was no reasonable probability that the alleged new testimony would lead to an acquittal on re-trial (Ex. E at 47). The post-conviction court denied Claim Two on the basis that Petitioner's allegation that the State knowingly presented false testimony was refuted by the record (App. F at 48). Plaintiff has not demonstrated that the post-conviction court's determinations were contrary to clearly established federal precedent or based upon an unreasonable determination of the facts.

### 1.     *Johnson's recanted testimony is not an independent ground for habeas relief*

The United States Supreme Court has recognized that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Petitioner strongly argues that this is not a claim of "actual innocence," but rather a claim of "newly discovered evidence." (Doc. 30 at 7). This argument is of no avail; recanted testimony, no matter the label, is not a stand-alone basis for federal habeas corpus relief. *Browlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002). It is not a habeas court's role to make its own determination of a petitioner's guilt or innocence based upon evidence that has emerged after trial. *Id.* at 1065. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 400. Accordingly, without an independent constitutional violation, Claim One fails.

### 2.   *Petitioner has not demonstrated a Giglio violation*

In this case, Petitioner argues that the prosecution's knowing use of perjured testimony amounted to a constitutional violation. Specifically, Petitioner alleges that prior to his trial, Johnson was interviewed by prosecutor Purdy regarding a taped statement that Johnson had made to the police "where she had falsely implicated [Petitioner]" in a burglary (App. F at 37). Johnson told Purdy that she had accused Petitioner in her statement to the police because she was upset with him at the time of her arrest. Purdy told Johnson that if she did not testify in accordance with her prior statement, the five-year plea agreement would be withdrawn and she would face life in prison. *Id.*

Petitioner raised this issue in his Rule 3.850 motion, and the post-conviction court denied the claim. Petitioner identifies no defect in the state court's fact-finding process, nor does a review of the record reveal any fact that was unreasonably determined by the state court. Accordingly, this Court

will proceed under 28 U.S.C. § 2254(d)(1) to determine whether the state court's conclusion resulted in a decision that was contrary to, or involved an unreasonable application of, *Giglio v. United States.*

Under *Giglio*, the prosecution's knowing use of material false evidence regarding a witness' motivation to testify violates due process. 405 U.S. 150 (1972).[6] This rule applies whether the prosecution actually solicited the perjured testimony or whether the prosecution permitted the testimony to stand uncorrected after learning of its falsity. *Id.* at 153. To establish a *Giglio* violation, a defendant must demonstrate that: (1) the testimony was false; (2) the state knew the testimony was false; and (3) there was a reasonable likelihood that the false testimony could have affected the judgment of the jury. *De Marco v. United States*, 928 F.2d 1074 (11th Cir. 1991); *Guzman v. State*, 868 So. 2d 498, 505 (Fla. 2003). The Eleventh Circuit has recognized that "[t]he thrust of *Giglio* and its progeny has been to ensure that the jury know the facts that might motivate a witness in giving testimony." *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983).

The state court did not unreasonably determine that the instant facts do not implicate the concerns raised in *Giglio.* First, the state court determined that Purdy had not knowingly presented false testimony at trial because Johnson had been reminded in court that she had agreed to testify truthfully in accordance with the terms of her plea agreement (App. F at 48). The trial transcript shows that Johnson was admonished by Purdy to testify truthfully and that the jury knew that Johnson had

---

[6]The prosecutor in *Giglio* had allowed to go uncorrected the trial testimony of his principal witness that he had made no deal with the government. In reality, the witness, had received a promise that he would not be prosecuted if he testified against Giglio. Concluding that the prosecutor's failure to correct the witness's false statement was incompatible with rudimentary demands of justice, the Supreme Court reversed. The Court reasoned that the prosecutor has a duty to disclose evidence affecting a witness's credibility and that the prosecutor's failure to disclose such evidence warrants a new trial if " 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' " *Id*. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 271(1959)).

been told that if she did not testify truthfully, her plea would get withdrawn:

> PURDY: And part of – just so we get this all on the record – part of your plea – you took a plea in this case, didn't you?
>
> JOHNSON: Yes, I did.
>
> PURDY: And what is your sentence?
>
> JOHNSON: My sentence is five years.
>
> PURDY: Five years what?
>
> JOHNSON: Five years Department of Corrections, prison.
>
> PURDY: And part of that plea agreement was that you were to testify truthfully in this cause, wasn't it?
>
> JOHNSON: Yes.
>
> PURDY: And if you don't testify truthfully, you understand your plea gets withdrawn and you get tried just like [Petitioner], face whatever happens to you at that point?
>
> JOHNSON: Right.

(App. B at 132-33). On cross-examination, Johnson again stated that she was only testifying at trial "to get a good deal from the state." (App. B at 160). Johnson's position and motivation for testifying at Petitioner's trial were clear to the jury. Because the jury was aware of Johnson's situation, it could test her credibility and take her threatened posture into consideration.

Next, the post-conviction court determined that Johnson "was a somewhat difficult witness for the State." (App. F at 48). At trial, portions of Johnson's original statements to the police were played where Johnson told police that Petitioner had loaded up "like eighteen guns in [his] truck" and left by himself (App. B at 176-177). However, when she testified at trial, Johnson backed away from her statement that Petitioner had "eighteen or nineteen" guns. Instead, she testified that she had only *heard*

that Petitioner had guns, but that she had not actually seen Petitioner with guns. On cross-examination, Johnson reiterated that she never saw Petitioner with guns (App. B at 153). Neither Petitioner, nor Johnson's notarized statement indicate which of Johnson's statements at trial were false. Even though Johnson's trial testimony was inconsistent with her sworn statements to the police, no exculpatory evidence was withheld from the jury. A prosecutor has no duty to correct that which is not false. *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989). Accordingly, this claim fails under the first prong of *Giglio*.

To the extent that Petitioner now claims that a *Giglio* violation occurred when the State played the taped statement Johnson had made to the police, Petitioner misunderstands *Giglio*. The *Giglio* rule is not intended to withhold information from a jury; rather, the purpose of *Giglio* and its progeny is "to insure that the jury knows the facts that might motivate a witness in giving testimony." *Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir.1986) (quoting *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983)). The prosecutor's alleged threat to withdraw the plea agreement if Johnson did not testify truthfully at Petitioner's trial could not have affected Johnson's earlier statements to the police.[7] In addition, the jury was fully aware of information that could have motivated Johnson to make false statements to the police. Johnson testified that she and Petitioner had dated and that Petitioner ran off with Johnson's belongings after she helped him obtain a vehicle (App. B at 121, 141). Johnson testified that she was arrested while in the process of "trying to recover what we could that [Petitioner] took from [her]." *Id.* at 142. Accordingly, Johnson's motivation behind her statement to the police was not withheld from the jury. The government does not violate *Giglio* simply by offering the testimony of

---

[7]Contrary to the notarized statement from Johnson, Purdy did not "threaten in open court to take back [Johnson's] 5 yr sentence." (Doc. 1-1 at 2).

11

a witness that has made prior inconsistent statements or who has a poor reputation for truthfulness. *See, e.g., Hays v. Alabama*, 85 F.3d 1492, 1499 (11th Cir. 1996). Mere inconsistency of statements is not perjury, and not every inconsistent statement is material. *Tejada v. Dugger*, 941 F.2d 1551, 1557 (11th Cir. 1991) (because the jury was made aware of inconsistent statement, the false testimony could not affect the judgment of the jury).

Under the facts of this case, no *Giglio* violation occurred. Because no *Giglio* violation occurred, Claim Two fails under 28 U.S.C. § 2254(d)(1).

### B.     *Claim Three*

In Claim Three, Petitioner alleges that counsel was ineffective for failing to adequately cross examine Johnson about her plea agreement with Purdy (Doc. 6 at 7). Specifically, Petitioner takes issue with counsel's failure to bring out the fact that Johnson faced a potential life sentence without a plea agreement (App. F at 41). Petitioner raised this ground in his Rule 3.850 motion, and the post-conviction court denied the claim because Petitioner failed to establish that counsel's performance was deficient regarding this matter:

> The transcript demonstrates that the terms of the plea agreement were presented to the jury. Ms. Johnson testified that her plea agreement entailed five years in the Department of Corrections provided she testified truthfully at the Defendant's trial. Further, she testified that she was a convicted felon and had been convicted of eight felonies. On cross-examination, the Defendant's counsel reiterated that Ms. Johnson was only testifying at trial because she agreed to as part of her plea agreement with the State. Moreover, counsel conferred with the Defendant before ending his cross-examination of Ms. Johnson and, after speaking with the Defendant, he stated to the Court that they were "good." The Defendant has failed to establish that counsel's performance was deficient regarding this matter.

(Ex. F at 49). Petitioner does not explain how the state court's conclusions were contrary to clearly established federal law or based upon an unreasonable determination of the facts.

Counsel cross-examined Johnson at length about her biases, motives for testifying, and inconsistent statements (App. B at 154-60). Although counsel did not specifically ask Johnson about the sentence she faced if she did not testify, Johnson reiterated that the was testifying at Petitioner's trial so that she could get a good deal from the state (App. B at 160). A review of the transcript shows that counsel's cross-examination of Johnson was objectively reasonable, indeed thorough. Petitioner's assertion that counsel should have delved into the potential penalties Johnson faced if she did not accept the plea agreement from the state is unavailing: the test for ineffectiveness is not whether counsel could have done more; "perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995). The post-conviction court did not unreasonably apply *Strickland* when reaching its decision that counsel had not rendered deficient performance. This claim fails under 28 U.S.C. § 2254(d)(1).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. Certificate of Appealability

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller–El*, 537 U.S. at 335–36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus (Doc. 14) filed by Warren L. Sims is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 19th day of December, 2012.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 12/19
Copies to:
Warren L. Sims
All Parties of Record